**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Southern Division

| | |
|---|---|
| **WHITAKER BROTHERS** : <br> **BUSINESS MACHINES, INC.** : <br> 3 Taft Court : <br> Rockville, Maryland 20850 : <br>  : <br> **Plaintiff** : <br>  : <br> v. : <br>  : <br> **SYNAPTYK NETWORKS, LLC** and : <br> **SYNAPTYK, INC.** and : <br> **SYNAPTYK SOFTWARE SOLUTIONS,** : <br> **LLC** : <br> 5700 Granite Parkway : <br> Suite 900 : <br> Plano, Texas 75024 : <br> **Serve:** : <br> Maryland State Department of Assessments : <br> and Taxation : <br> 301 W. Preston Street : <br> Room 801 : <br> Baltimore, MD 21201 : <br>  : <br> **Defendants** : | Civil Action No. _____ |

**COMPLAINT**
(With Demand for Trial by Jury)

**I. PARTIES**

1.  Plaintiff, Whitaker Brothers Business Machines, Inc., ("Whitaker Brothers") is a Maryland corporation which is incorporated in the state of Maryland and has its principal place of business in Rockville, Maryland. Whitaker is licensed to transact and does business in the state of Maryland.

1

2. Upon information and belief, Defendant Synaptyk Networks, LLC ("Synaptyk Networks") is a Texas limited liability company with its principal place of business in Plano, Texas.  Upon information and belief, Synaptyk Networks is not licensed to transact business in the state of Maryland, however, at all pertinent times as described herein, Synaptyk Networks did business in the state of Maryland.

3. Upon information and belief, Defendant Synaptyk, Inc. is a Texas corporation with its principal place of business in Plano, Texas.  Upon information and belief, Synaptyk, Inc. is not licensed to transact business in the state of Maryland, however, at all pertinent times as described herein, Synaptyk, Inc. did business in the state of Maryland.

4. Upon information and belief, Defendant Synaptyk Software Solutions, LLC ("Synaptyk LLC") is a Texas limited liability company with its principal place of business in Plano, Texas.  Upon information and belief, Synaptyk LLC is an affiliate and/or alter ego of Defendant Synaptic Networks and Synaptyk, Inc., doing business in the same location under common ownership and the same executive leadership as Synaptyk Networks and Synaptyk, Inc.  Upon information and belief, Synaptyk LLC is not licensed to transact business in the state of Maryland, however, at all pertinent times as described herein, Synaptyk LLC did business in the state of Maryland.  Defendants Synaptyk Networks, Synaptyk, Inc. and Synaptyk LLC shall be hereafter jointly referred to as "Synaptyk".

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). The plaintiff and defendants are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

6. Venue in this Court is appropriate under 28 U.S.C. § 1391(a), (b)(2) and (c)(2).

## III. FACTS COMMON TO ALL COUNTS

7. Plaintiff Whitaker Brothers is a company that sells and services data destruction equipment to government contractors and commercial entities.

8. In approximately February 2013, Synaptyk presented Whitaker Brothers with an agreement for Synaptyk to furnish SAP Business ByDesign software ("SAP BYD") to Whitaker Brothers and assist Whitaker Brothers in implementing its use of the software "for customer relationship management, sales, financial, procurement, inventory, project management, asset management, warranty work and analytics."

9. Synaptyk provided Whitaker Brothers with several contract documents. The first, the "Base Agreement for SAP Business ByDesign Solutions", stated that it formed the basis for the parties' relationship regarding the licensed use of all SAP BYD solutions and all related services by the Reseller, Synaptyk, to the Customer, Whitaker Brothers. The Base Agreement and the documents listed in Section 2.2 of the Base Agreement entered into between the parties were stated to collectively form the "SAP BYD Solution Agreement".

10. Section 2.2 of the SAP BYD Solution Agreement stated that the Agreements consisted of: (a) the Base Agreement; (b) any "Transaction Agreement(s)"; (c) any "Statement(s) of Work"; (d) the "Support for SAP Business ByDesign Solutions"; (e) the "SAP General Terms and Conditions for SAP Business ByDesign Solutions"; and (f) any other document referencing the Base Agreement.

11. The Agreement stated that the contract shall be made by Synaptyk accepting Whitaker's offer, and that the Customer shall make such offer by sending a signed copy of the Agreement to the address set out in the agreement.

12. The Agreement stated that acceptance by Reseller may occur either by express confirmation of Customer's offer or by Reseller and/or SAP America, Inc. ("SAP") starting performance under any Transaction Agreement or Statement of Work.

13. Whitaker Brothers signed and transmitted three signature pages to Synaptyk dated March 7, 2013: the "Base Agreement"; the "Transaction Agreement for SAP Business ByDesign (On Demand)"; and the "Statement of Work". Synaptyk did not return to Whitaker Brothers copies of these agreements with Synaptyk's signature.

14. By invoice dated March 8, 20103, Synaptyk invoiced Whitaker Brothers in the total amount of $ 86,254.56 as follows:

| | |
|---|---|
| 528 Total Hours for SAP BYD Implementation Services: | $ 52,800.00 |
| 12 Total Months of SAP BYD Application Managed Services | $ 6,000.00 |
| 12 Months of SAP BYD Users | $ 27,454.56 |

On April 16, 2013, Whitaker made payment to Synaptyk in the total amount of $86,254.56.

15. According to the parties' contract, Synaptyk was to offer several critical services to Whitaker Brothers including: (a) Project Management; (b) Prepare Phase; (c) Fine Tune and Integrate & Extend; (d) Test Phase; and (e) Go Live Phase.

16. On approximately March 13, 2013, Synaptyk began implementation as described in the parties' contract. Synaptyk assigned its employee Jeff Crooks to serve as its primary representative on the Whitaker Brothers project.

17. Mr. Crooks participated in two attempts to launch the SAP product at Whitaker Brothers. The first launch was cancelled at the request and recommendation of Mr. Crooks as Synaptyk Project Manager.

18. The test area could barely be described as functional, which prevented Whitaker Brothers from doing any meaningful testing. At one point Whitaker Brothers was five days away from "go-live" and it was still unable to move an order from start to finish through the new system.

19. At the second launch effort, a major component of the software was not ready to proceed, and the second launch effort likewise failed. When Mr. Crooks arrived on site to do final training, he discovered that a critical element of the purchasing supply chain had not been completed by his implementation team as he had asked. Whitaker Brothers was given the choice of delaying launch again, or forgoing all training so Mr. Crooks could spend the entire week fixing the Synaptyk team's mistake.

20. Whitaker Brothers never actually made a decision to delay or skip training because shortly thereafter, Mr. Crooks advised that he could not finish the corrective work in time anyway. At this point, Whitaker Brothers was entering its "heavy buy"

season in which it was required to focus its full energies on serving its customers. It was therefore agreed that efforts to launch the system would resume following the completion of the "heavy buy" season sometime in October 2013.

21.  In September 2013, Synaptyk advised Whitaker Brothers that its primary contact, Jeff Crooks, was departing the company. Weeks later, Whitaker Brothers then learned that Synaptyk's relationship with SAP as an authorized reseller had been severed, and that Synaptyk would no longer be able to complete the project. There was a brief discussion about the possibility that Jeff Crooks would move forward with the project as an independent contractor, but after four weeks of waiting, Whitaker Brothers was advised that Mr. Crooks determined that this would not be feasible.

22.  Synaptyk had no remedy for Whitaker Brothers and the project had been in transition for over a month. On its own initiative, Whitaker Brothers contacted SAP Corporate directly to discuss the possibility of having SAP finish the implementation process directly. However, Whitaker was informed that after launch, SAP would insist upon payment for support services at a rate of $300.00 an hour, three times the amount that would have been charged by Synaptyk if it had complied with its contract.

23.  Whitaker has been damaged in that it has been left with a software product which is completely useless. Whitaker Brothers has also received no value for the $86,254.56 paid for the purchase and implementation of this software.

24.  By letter dated February 17, 2014, counsel for Whitaker Brothers formally placed Synaptyk on notice that it is in breach of contract and demanded that Synaptyk immediately reimburse the fees Whitaker Brothers paid for Synaptyk's services.

25. To date, Synaptyk has not responded to the letter.

26. As a result of Synaptyk's failure, Whitaker Brothers has been further damaged in hundreds of hours of employee time spent attempting to implement the failed project and damage to Whitaker Brother's business.

## COUNT I
## (Breach of Contract)

27. Plaintiff incorporates by reference each of the allegations set forth in paragraphs 1 through 26 above as if expressly set forth herein.

28. Under the agreement, Defendants owed specified services which it has failed to perform.

29. Defendants have breached their contract with Plaintiff and despite demand, have failed to refund the sums Whitaker paid for their services.

30. Defendants' breached of contract have caused damages to Plaintiff.

31. Plaintiffs have been damaged in the amount they paid for defendants' services $86,254.56, as well as employee time spent attempting to implement the failed project, damage to Whitaker Brother's business, legal fees, expenses, and costs.

## COUNT II
## (Conversion)

32. Plaintiff incorporates by reference each of the allegations set forth in paragraphs 1 through 31 above as if expressly set forth herein.

33. Defendants have received, willfully retained, and otherwise benefitted from monies belonging to the Plaintiff, with full knowledge thereof.

34. Plaintiffs have been damaged in the amount they paid to defendant,

$86,254.56, which amount defendants have wrongfully retained and converted to their own use and which should have been held in trust for Plaintiff and promptly returned to Plaintiff.

WHEREFORE, Plaintiff prays for judgment against the defendants, jointly and severally, as follows:

    a.    Compensatory damages in the contract amount of $86,254.56;

    b.    Compensatory damages for employee time spent attempting to implement the failed project and other damage to Whitaker Brother's business;

    c.    Interest, legal fees, costs, and expenses of this suit; and

    d.    Such other and further relief as this Court may deem just and proper.

### Demand for Trial by Jury

Plaintiff Whitaker Brothers hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

GAVETT, DATT & BARISH, P.C.

BY   /s/Geoffrey S. Gavett
Geoffrey S. Gavett, Federal Bar #1997
15850 Crabbs Branch Way
Suite 330
Rockville, MD 20855-2675
(301) 948-1177
**Counsel for Plaintiff**
**Whitaker Brothers**

March 26, 2014

F:\Data\GD\Corporate\265.000\265.018\Pleadings\Whitaker Bros v Synaptyk Complaint 03 25 2014.docx